## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------X
                                       :

MALIBU MEDIA, LLC,                       :

                               :       Case No. 2:15-cv-03504-JFB-SIL

                    Plaintiff,       :

                               :

                    vs.            :

                               :

JOHN DOE subscriber assigned IP Address   :

98.116.160.61,                             :

                               :

                  Defendant.     :

                               :

-------------------------------------------------------------X

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO QUASH

      Plaintiff, Malibu Media, LLC ("Plaintiff"), opposes Defendant John Doe's ("Defendant") Motion to Quash ("Defendant's Motion") [CM/ECF 10], but has no objection to allowing Defendant to proceed on the record anonymously through the conclusion of discovery.

## I.      INTRODUCTION

      Plaintiff's constitutional right under the Petition Clause to seek redress for the online infringement of its copyrights is at issue.  Indeed, without the ability to obtain a subscriber's identity in an online infringement case, there is no remedy for online copyright infringement.  Granting this motion to quash would be inconsistent with the Copyright Act, congressional intent, Second Circuit precedent, and the nearly universal opinion of district court judges around the country.  The Court need not do so, however, because none of Defendant's three arguments to support his request have merit.  Defendant's first argument, that he is not the infringer, is nothing more than a denial.  While Defendant's denial is very likely false, even if Defendant is not the infringer, his identity is both relevant and discoverable under the Federal Rules.  Indeed,

identifying Defendant, the subscriber assigned the infringing IP address, is the only way to identify the infringer. And, again, Defendant is most likely the infringer. Defendant lacks standing to make his second argument—that the subpoena causes "undue burden"—because Defendant is not subject to the subpoena and is not required to take action thereunder. Defendant's third argument—that the Court erred in concluding that Plaintiff established "good cause" for the issuance of the third-party subpoena—is both factually and legally unsupported and unsupportable.  For these reasons, as explained more fully below, Defendant's Motion fails to assert a legally cognizable reason to quash a subpoena under Rule 45. Consequently, Plaintiff respectfully requests this Court deny Defendant's Motion.

## II.   FACTS

Colette Pelissier Field, a former real estate agent, and her husband Brigham Field, a photographer, are Plaintiff's sole founders, creators, and owners.  *See* Accompanying Declaration of Colette Pelissier Field ("Field Decl.") at ¶¶ 2, 5.  Colette and her husband started Plaintiff's business because they felt there was a lack of erotica with high production value and cinematic quality.  *Id.* at ¶ 3.  They invested all of their available resources into their company, dubbed "X-art," to reflect their artistic aspirations, and they continue to invest millions to produce the best quality product possible.  *Id.* ¶¶ 4, 8.  With hard work and good fortune, the Fields' vision came to fruition; today, their subscription-based website (X-art.com) has tens of thousands of paying members.  *Id.* ¶¶ 6–7.  Further, X-Art's content is currently licensed in over 50 countries and on three major U.S. cruise lines.  *Id.*  And, Plaintiff has won numerous awards, including, most recently, the 2015 "Adult Site of the Year."  *Id.*

Unfortunately, Plaintiff's highly popular content is infringed online through the BitTorrent protocol by tens of thousands of U.S. citizens each month.  *Id.* ¶ 9.  Plaintiff receives

complaints from its members asking why they should continue to subscribe when others are stealing Plaintiff's movies via BitTorrent without consequence. *Id.* ¶ 10. Since the piracy of Plaintiff's works makes it increasingly difficult for Plaintiff to grow and maintain its subscribers and licensing deals, Plaintiff invests significant resources into pursuing all types of anti-piracy enforcement. *Id.* ¶ 11. Additionally, Plaintiff exercises its rights under the Copyright Act by suing the worst of its infringers (*i.e.*, those who *repeatedly* download and distribute Plaintiff's copyrighted content online over an extended period of time). *Id.* ¶ 15.

To that end, Plaintiff retained a computer investigator to identify Plaintiff's serial infringers. Plaintiff's investigator has identified Defendant, and Defendant is very likely one such infringer. At a minimum, Defendant's internet has been used by a serial infringer. Accordingly, this infringement action aims to deter the piracy of Plaintiff's works and to seek lawful compensation for infringement. Since Plaintiff is only able to identify Defendant by his Internet Protocol ("IP") address, this Court entered an order on July 29, 2015 allowing Plaintiff to serve a Rule 45 subpoena on Verizon, Defendant's internet service provider ("ISP"), to identify Defendant. *See* CM/ECF 9.

On September 28, 2015, Defendant moved to quash the subpoena. Defendant's Motion is riddled with factual misstatements, relies upon inapposite authority, and fails to assert a legally cognizable reason to quash a subpoena under Rule 45.

### III.   LEGAL STANDARD

Rule 45(d)(3) sets forth six limited situations under which a subpoena may be quashed (or modified): (1) if the subpoena "fails to allow a reasonable time to comply"; (2) if the subpoena requires a non-party to travel more than 100 miles (except for trial within the state); (3) if the subpoena requires disclosure of privileged materials; (4) if the subpoena subjects a person

to "undue burden"; (5) if the subpoena requires disclosure of "a trade secret or other confidential research, development, or commercial information"; or (6) if the subpoena requires disclosure of certain expert opinions.  *See* Fed. R. Civ. P. 45(d)(3)(A)–(B).  The six circumstances enumerated in Rule 45(d)(3) are the **only** permissible reasons to quash or modify a subpoena.  *See* Fed. R. Civ. P. 45(d)(3)(A)–(B); *Malibu Media, LLC v. John Does*, No. 12-cv-03170, 2013 WL 1164867, *2 (D. Colo. Mar. 20, 2013) (denying a motion to quash in a similar action under similar circumstances, emphasizing: "no other grounds are listed"); *Malibu Media, LLC v. Doe*, No. 1:15-cv-01834, CM/ECF 19 (S.D.N.Y. July 20, 2015) (same); *Malibu Media, LLC v. Doe*, No. JKB-13-512, 2013 WL 6577039, *1 (D. Md. Dec. 12, 2013) (same); *Malibu Media, LLC v. John Does 1–9*, No. 8:12-cv-00669, CM/ECF 25 (M.D. Fla. July 6, 2012) (same).

## IV.   ARGUMENT

### A. Arguments That Go To The Merits Of Plaintiff's Complaint Have No Bearing On A Motion To Quash

Defendant does not dispute that he is the subscriber assigned the IP address used to infringe (98.116.160.61), nor does he dispute that he resides within the Eastern District of New York.  He nevertheless seeks to quash the Court-authorized third party subpoena by representing that he "did not copy or transmit Plaintiff's copyrighted works," "was not a part of Plaintiff's alleged BitTorrent 'swarm,'" and is an "innocent Defendant."  CM/ECF 10 at p. 2.  According to Defendant, "Defendant strongly believes that his IP address was erroneously identified or wrongfully framed by an unknown internet user." *Id.* at p. 13.  Defendant refers to a study conducted at the University of Washington, and argues that this study supports his claim that he could have easily been "framed" for copyright infringement.  *See* CM/ECF 10 at p. 3 (citing to http://dmca.cs.washington.edu/dmca_hotsec08.pdf).

4

Either Defendant misreads this study or he does not understand the nature of Plaintiff's evidence. The University of Washington study determined that "a common approach for identifying infringing users"—an approach that does not involve direct TCP/IP connections—is "inconclusive" for identifying infringing BitTorrent users. *See id.* The study concludes that "[a] more thorough approach to detecting infringement in BitTorrent would be to adopt the stated industry practice for monitoring the [peer-to-peer] network: *in the case of suspected infringement, download data directly from the suspected user and verify its contents*. [U]se of direct downloads for verifying participation … reduces the potential for false positives…." *Id.* (emphasis supplied). Here, Plaintiff used the <u>exact</u> process that the study recommends; Plaintiff's investigator established a direct one-to-one connection with a computer using Defendant's IP address and received pieces of Plaintiff's copyrighted movies from that computer. These infringing transactions were recorded in their entirety in PCAP computer files. Plaintiff routinely produces these files in discovery. Further, as the study suggests is necessary, Plaintiff confirmed the transmitted data is a copy of Plaintiff's protected works. *See* CM/ECF 8. Defendant's argument was popular in 2011–12 and now is rarely raised because it is factually wrong. Indeed, numerous defense experts have received the PCAPs and have never challenged them on the basis that they do not show an infringing transaction. Further, the process used by Plaintiff to detect copyright infringers, which mirrors the process used by law enforcement to detect cyber criminals, has been tested and it works. *See* Accompanying Declaration of Patrick Paige ("Paige Decl.") at ¶¶ 20–35; *see also, e.g.*, *Malibu Media, LLC v. Does*, 950 F. Supp.2d 779, 778 (E.D. Pa. 2013) ("the technology employed … was valid.").

What's left, then, is Defendant's assertion that someone besides him used his wireless internet to infringe. But it is extremely well settled that arguments that attack the merits of

Plaintiff's Complaint by denying ultimate liability have no bearing on a motion to quash.  Courts repeatedly and uniformly instruct that the possibility that an internet subscriber is not the actual infringer is <u>not</u> a sufficient basis for quashing a Rule 45 subpoena.  *See, e.g.*, *Malibu Media, LLC v. Doe*, No. 13 C 8484, 2014 WL 1228383, *2 (N.D. Ill. Mar. 24, 2014) ("If Doe is contesting whether he actually downloaded files, such arguments go to the merits of the action and are not relevant as to the validity or enforceability of a subpoena, but rather should be presented and contested once parties are brought properly into the suit"); *TCYK, LLC v. Does*, No. 2:13-cv-539, 2013 WL 4805022, *4 (S.D. Ohio Sept. 9, 2013) ("[A]rguments related to the merits of the allegations are appropriately addressed in the context of a motion to dismiss or a motion for summary judgment, rather than on a motion to quash.").  Even if Defendant is not personally responsible—a consideration that is entirely premature at this stage of the litigation—Defendant's identity remains relevant and discoverable.  Defendant, as the subscriber of the infringing IP address, very likely possesses information "necessary to allow Plaintiff to ascertain the infringer's true identity." *Malibu Media, LLC v. Doe*, No. 14-3945, 2015 WL 3795716, *2–4 (D. N.J. June 18, 2015); CM/ECF 9 (correctly holding that Plaintiff's subpoenaed information is necessary to allow Plaintiff to identify the appropriate defendant and to effectuate service of an Amended Complaint).  For these reasons, Defendant's denial of wrongdoing is <u>not</u> a legally cognizable basis to quash the subpoena. *See* Fed. R. Civ. P. 45(d)(3).

### B. Defendant Lacks Standing To Assert "Undue Burden" Under Rule 45 And Has No Expectation Of Privacy In The Identifying Information The Subpoena Seeks

The next argument Defendant raises is that quashing the subpoena is necessary because it subjects Defendant to undue burden:

> If Defendant's identifying information is given to Plaintiff, Plaintiff, as party of their [sic] business model, will seek settlements of thousands of dollars claiming

Defendant's responsibility for eighteen downloads of copyright protected works under the threat of litigation and public exposure with no serious intention of naming Defendant.

Such an undue burden should not be shouldered by Defendant as the costs to Defendant clearly outweigh the frivolous and non-existent benefits of Plaintiff's claim, given their [sic] practice of judicial system abuse and the nature of these suits.

CM/ECF 10 at p. 15.

As addressed further below, Defendant's speculative argument is factually 100% baseless. Legally, Defendant lacks standing to make this argument. Contrary to Defendant's assertion, he will not have to "shoulder" any burden whatsoever because "the undue burden contemplated by Rule 45 is one placed on the direct recipient of the subpoena, the ISP in this case, not on third parties such as the Doe defendants." *CineTel Films, Inc. v. Does*, 853 F. Supp. 2d 545, 556 (D. Md. 2012). A party "does not have standing to object to a subpoena directed to a non-party witness." *Samad Bros., Inc. v. Bokara Rug Co., Inc.*, No. 09 Civ. 5843, 2010 WL 5094344, *2 (S.D.N.Y. Nov. 30, 2010); *see also Malibu Media, LLC v. Does*, No. 12-3896, 2012 WL 6203697, *4 (D. N.J. Dec. 12, 2012) ("Defendants do not have standing to contest the third-party Subpoenas on the basis of undue burden."); *Malibu Media, LLC v. Does*, 902 F.Supp.2d 690. 698 (E.D. Pa. 2012) ("The Court rejects the assertion that the third-party subpoenas served on the ISPs would subject the John Does to undue burden. Notably, the subpoenas are addressed to third parties—the ISPs, not the John Does. The ISPs have not objected to the subpoenas, nor would any objection by them have much chance of success…."). Courts in New York have "extensively addressed this issue in copyright BitTorrent actions" and have repeatedly ruled in accord, holding that Doe Defendants "<u>have no standing to move to quash the subpoena that is issued to a third party, such as an ISP, on the basis of undue burden [because the Doe's privacy concerns] *have no place within the undue burden calculus, as the burden of literal compliance*</u>

7

**_with this subpoena falls to a third-party, Verizon_**." *E.g.*, *Malibu Media, LLC v. Doe No. 4*, No. 12 Civ. 2950, 2012 WL 5987854, *2 (S.D.N.Y. Nov. 30, 2012).

Even if Defendant had standing, Plaintiff's significant interest in discovering Defendant's identity outweighs Defendant's slight interest in shielding his identity. Indeed, "courts have consistently held that there is no expectation of privacy in Internet subscriber information because it has already been exposed to a third party, the Internet Service Provider." *E.g.*, *Malibu Media, LLC v. Does*, No. 1:12-cv-263, 2012 WL 6019259, *4 (N.D. Ind. Dec. 3, 2012). "Additionally, when there is an allegation of copyright infringement, an individual has no protected privacy interest in their name, address, phone number, e-mail address, or Media Access Control address.   [The] argument that fulfilling the subpoena would invade [an internet subscriber's] privacy and jeopardize his identity is insufficient to quash the subpoena as [there is] no expectation of privacy in the identifying information the subpoena seeks from the ISP." *Id.*; *see also Raw Films, Ltd. V. John Does 1-15*, No. 11-7248, 2012 WL 1019067, *8 (E.D. Pa. Mar. 26, 2012) (holding that individuals who use the internet to illegally copy and distribute copyrighted material have a minimal expectation of privacy since they "have already voluntarily given up certain information by engaging in that behavior").

### C.  Defendant's Argument that Plaintiff Failed to Establish the Requisite "Good Cause" to Warrant Issuance of the Subpoena is Wrong

Defendant's remaining argument—that the Court should reconsider its finding that Plaintiff demonstrated "good cause" for the issuance of the subpoena—is not a recognized basis to quash. *See* Fed. R. Civ. P. 45(d)(3)(A)–(B).  Moreover, this argument is untimely. *See* L. R. 6.3 ("a notice of motion for reconsideration or reargument of a court order determining a motion shall be served within fourteen (14) days after the entry of the Court's determination of the original motion").  Assuming *arguendo* that the Court chooses to consider this argument,

Defendant fails to argue any basis upon which the Court may find it committed clear error or abused its discretion in finding that Plaintiff demonstrated "good cause" to serve the subpoena.

### 1. Legal Standard Governing Expedited Discovery Requests to Identify an Anonymous Defendant

Since the identification of an infringer is "*indispensable* for the vindication of [a] plaintiff's copyright rights," the Second Circuit has adopted a "flexible standard of reasonableness and good cause" to grant motions that seek leave to identify infringers known only by an anonymous IP address. *Arista Records, LLC v. Doe*, 604 F.3d 110, 115 (2d Cir. 2010); *Ayyash v. Bank Al-Madina*, 233 F.R.D. 325, 327 (S.D.N.Y. 2005). To satisfy this standard, a plaintiff need only (1) make a *prima facie* showing of a claim of copyright infringement; (2) submit a specific discovery request; (3) credibly allege an absence of alternative means to obtain the requested discovery; (4) sufficiently articulate a central need for the subpoenaed information; and (5) viably show that the defendant has a minimal expectation of privacy. *See Arista Records*, 604 F.3d at 115; *Malibu Media, LLC v. Does*, No. 12 Civ. 3810, 2013 WL 3732839, *5 (S.D.N.Y. July 16, 2013) (same); *John Wiley & Sons, Inc.*, 284 F.R.D. 185, 189 (S.D.N.Y. 2012) (same); *Sony Music Entm't v. Does*, 326 F. Supp.2d 556, 664–66 (S.D.N.Y. 2004) (same); *cf also Davis v. Kelly*, 160 F.3d 917, 921 (2d Cir. 1998) (holding that courts should not dismiss suits against unnamed defendants or defendants identified only as John Does until the plaintiff is given "some opportunity for discovery to learn the identities").

Indeed, in a nearly identical peer-to-peer infringement lawsuit, the Second Circuit upheld denying a motion to quash on the basis that "plaintiffs' Complaint, attached exhibit, and supporting declaration are clearly sufficient to meet [the] standard … to subpoena an anonymous Internet defendant's identifying information." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 123 (2d Cir. 2010). "The privacy claimed here is not for the information that the computer owner or

user wishes to share but rather for his or her identity. [W]e regard Doe 3's expectation of privacy for sharing copyrighted music through an online file-sharing network as simply insufficient to permit him to avoid having to defend against a claim of copyright infringement." *Id*.

Here, this Court went through the analysis and determined that "[t]he weight of authority counsels in favor of finding the required good cause." CM/ECF 9 at p. 9. This Court therefore authorized Plaintiff to issue a subpoena and imposed restrictions on the subpoena designed to protect and safeguard Defendant's privacy interests. *See id.* Now, without meaningful discussion, Defendant argues that the Court's finding of "good cause" was an abuse of discretion because Plaintiff (1) failed to allege a *prima facie* claim for copyright infringement; (2) has alternative means of identifying Defendant aside from the issuance of a third-party subpoena; and (3) is likely to abuse the Court's subpoena power for an improper purpose. These arguments are baseless.

### 2.  Plaintiff Alleged a *Prima Facie* Claim for Copyright Infringement

First, Defendant argues that Plaintiff did not establish a *prima facie* infringement claim because one or more of its works may ultimately be considered "obscene." *See* CM/ECF 10 at p. 10. Merely suggesting, without any evidence or analysis, that one or more of Plaintiff's copyrighted works might be deemed obscene is insufficient. Plaintiff established *prima facie* evidence that its works are copyrightable and validly copyrighted by virtue of having obtained copyrights for its works from the United States Register of Copyrights.[1] *See* 17 U.S.C. § 410(c); *Urbont v. Sony Music Entm't*, No. 11 Civ. 4516, 2015 WL 1781409, *4 (S.D.N.Y. April 20, 2015) ("a certificate of registration made before or within five years after first publication of the work constitutes prima facie evidence of the validity of the copyright"). The burden therefore falls on Defendant to "demonstrate[e] that [Plaintiff's works] are not copyrightable." *Sorenson v.*

---

[1] *See* CM/ECF 1-2 (providing registration numbers).

*Wolfson*, No. 10 cv 4596, 2015 WL 1454498, *11 (S.D.N.Y. Mar. 31, 2015).   The mere suggestion that one or more works might be obscene does not and cannot satisfy Defendant's burden since the Copyright Act neither includes content-based restrictions on copyrightability nor prohibits the protection of obscene materials.   *See, e.g.*, *Flava Works, Inc. v. Gunter*, 689 F.3d 754, 755–56 (7th Cir. 2012); *Dream Games of Az., Inc. v. PC Onsite*, 561 F.3d 983, 990 (9th Cir. 2009); *Jartech, Inc. v. Clancy*, 666 F.2d 403, 406 (9th Cir. 1982); *Mitchell Bros. Film Grp. v. Cinema Adult Theater*, 604 F.2d 852, 863 (5th Cir. 1979); *Malibu Media, LLC v. Benson*, No. 13-cv-02394, 2014 WL 2859618, *4 (D. Colo. June 20, 2014); *Malibu Media, LLC v. Zumbo*, No. 2:13-cv-729, 2014 WL 2742830, *4 (M.D. Fla. June 17, 2014); *Nova Prod., Inc. v. Kisma Video, Inc.*, No. 02 Civ 3850, 2004 WL 2754685, *3 (S.D.N.Y. 2004); *Wojnarowicz v. Am. Family Ass'n*, 745 F. Supp. 130, 146 n.12 (S.D.N.Y. 1990).

Next, Defendant argues that Plaintiff failed to definitively establish that Defendant himself is responsible for the violation.   *See* CM/ECF 10 at p. 10.   Again, this argument is premature and has nothing to do with a *prima facie* pleading.   "Proof is not required to properly plead a claim for copyright infringement," and Plaintiff does not need to establish with 100% certainty that Defendant, the individual assigned the infringing IP address, is the infringer. *Malibu Media, LLC v. Harris*, No. 1:12-cv-1117, 2013 WL 3780571, *3 (S.D. Ind. July 18, 2013).   Rather, Plaintiff must only plead enough factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   *Eyal R.D. Corp. v. Jewelex New York Ltd.*, 784 F. Supp.2d 441, 446 (S.D.N.Y. May 4, 2011).   Defendant notes that Judge Nathan observed that 30% of the time the copyright infringer is not the IP-registrant but someone else using his or her internet [CM/ECF 10 at p. 11], but that statistic does

not apply to Plaintiff.[2]  Even if it did, it would mean there is a 70% chance that Defendant is the

infringer.  Consequently, Plaintiff's well-pled plausible allegations constitute "a concrete, *prima*

*facie* case of copyright infringement." *Malibu Media, LLC v. Does*, No. 12-civ-3810, 2013 WL

3732839, *5 (S.D.N.Y. July 16, 2013); *see also, e.g.*, *Malibu Media, LLC v. Doe*, No. 1:15-cv-

00366, CM/ECF 16 (E.D. Va. July 23, 2015) ("It is reasonable to draw the inference that the

party responsible for downloading … was the party responsible for the internet connection. …

Malibu Media is not required to prove its case at the pleading stage"); *Malibu Media, LLC v.*

*Doe*, No. 14-cv-0932, 2015 WL 2451926, *3 (E.D. Wisc. May, 21, 2015) (same); *Malibu Media,*

*LLC v. Dreev*, No. 6:13-cv-1959, CM/ECF 35 (M.D. Fla. Jan. 5, 2015) (same); *Malibu Media,*

*LLC v. Doe*, No. No. PWG-13-365, 2014 WL 7188822, *5 (D. Md. Dec. 16, 2014) (same).[3]

Defendant's final argument asserts that Plaintiff "fails to present any evidence that

[Defendant] either uploaded, downloaded, or even possessed a complete copyrighted video file."

CM/ECF 10 at p. 11.  Once again, such presentment of evidence is not required to properly plead

a *prima facie* claim of infringement—"[p]roof is not required to properly plead a claim for

copyright infringement." *Malibu Media, LLC*, 2013 WL 3780571 at *3. "To require Malibu to

prove that the subscriber more likely than not is the infringer—that is, to meet its ultimate burden

of proof—at the pleading stage would turn the civil litigation process on its head; there is no

requirement that Malibu present at this stage actual evidence to support the merits of its

infringement allegations." *Malibu Media, LLC v. Doe*, No. PWG-13-365, 2014 WL 7188822, at

*5 (D. Md. Dec. 16, 2014).  Notably, Plaintiff's Complaint alleges that Defendant "downloaded,

---

[2] The 30% statistic pertained to a different copyright holder utilizing a different detection system for purposes of identifying an individual responsible for downloading not 18 works for a few months (as is at issue in this case) but only one single work on one single day.  *See In re BitTorrent*, 296 F.R.D. 80, 84 (E.D.N.Y. 2012).

[3] Even if Defendant is not the infringer, "the information sought by the subpoena is reasonably calculated to lead to the discovery of information necessary to allow Plaintiff to ascertain the infringer's true identity."  *Malibu Media, LLC v. Doe*, No. 14-3945, 2015 WL 3795716, *2–4 (D. N.J. June 18, 2015).

copied, and distributed a *complete copy* of Plaintiff's movies without authorization." CM/ECF 1 at p. 4. This allegation is plausible because Plaintiff <u>recorded</u> Defendant systematically using BitTorrent for nearly a year. "Someone who starts downloading a movie intends to watch the movie, and thus the person will likely download the full movie. This means that there is a nonnegligible probability that a user who has a piece of a file constituting a movie on his computer also has the remaining pieces." *Malibu Media, LLC v. Doe*, No. 13-C-0213, 2013 WL 5876192, *2 (E.D. Wis. Oct. 31, 2013).

Regardless, Plaintiff does not have to prove that Defendant downloaded or distributed complete files because binding precedent holds that "a copyright infringement may occur by reason of a substantial similarity that involves only a small portion of each work." *Burroughs v. Metro-Goldwyn-Mayer, Inc.*, 683 F.2d 610, 624 n.14 (2d Cir. 1982); *see, e.g.*, *Burgin v. Nat'l Football League*, No. 13-civ-8166, 2014 WL 1760112, *2 (S.D.N.Y. April 30, 2014) (copying of a protected work is actionable so long as it is not "so trivial as to fall below the quantitative threshold of substantial similarity"); *Patrick Collins, Inc. v. Doe*, 945 F. Supp.2d 367, 377 (S.D.N.Y. 2013) (same); *Belair v. MGA Entm't, Inc.*, 831 F. Supp.2d 687, 693 (S.D.N.Y. 2011) (infringement may occur "through literal copying of [only] a portion of [a work]"). "[T]he inconclusive nature of the evidence" is irrelevant at the pleading stage." *Malibu Media, LLC v. Doe*, No. 15-cv-1862, 2015 WL 4271825, *2 (S.D.N.Y. July 14, 2015); *Malibu Media, LLC v. Doe*, No. 1:15-cv-01834, CM/ECF 19 (S.D.N.Y. July 20, 2015) (same); *Malibu Media, LLC v. Gilvin*, No. 3:13-cv-72, 2014 WL 1260110 (N.D. Ind. Mar. 26, 2014) (same); *Malibu Media, LLC v. Doe*, No. 13 C 8484, 2014 WL 1228383, *2 (N.D. Ill. Mar. 24, 2014) ("[I]nform[ing] the Court of how much of each file Doe had downloaded or shared … is not required"); *Malibu Media, LLC*, 2013 WL 5876192 at *2 ("[A]t the pleading stage certainty is not required.").

13

### 3.   No Alternative Means Exist to Obtain Defendant's True Identity

This Court found that "Malibu Media is without an alternative viable method of obtaining the identity of the Doe Defendants without a court-ordered subpoena."   CM/ECF 9 at p. 9. Defendant curiously attacks this finding by suggesting that "Plaintiff's assertion that there is no alternative means of obtaining the desired information is inadequate."  CM/ECF 10 at p. 12.  Yet, this Court and countless others have decisively ruled otherwise, and Defendant makes absolutely no effort to identify any alternative means.  Defendant's failure to identify any alternative means suggests that no alternative means exist, and that his argument is disingenuous.  Indeed, there are no publicly-available databases or "yellow pages" that can identify an individual by an IP address; Plaintiff knows Defendant only by his IP address.  The government, law enforcement officials, criminal and civil judges, and ISPs alike all acknowledge that subpoenaing an ISP is the only way to identify an internet subscriber.  Congress has also so found, and has expressly created this system for copyright holders to subpoena ISPs in order to identify copyright infringers.[4]

People using the internet are anonymous to the public, but the ISPs responsible for assigning an IP address "know who an address is assigned to and how to get in contact with

---

[4] The problem with ISPs being the only entities capable of identifying internet users is that ISPs are not required to maintain their records for any specified period of time.  To ameliorate some of this problem in the online copyright infringement context, Congress authorizes copyright holders to sue for internet piracy and provides ISPs with a shield from liability contingent upon their assistance in identifying infringers.  *See* S. REP. 105-190, 20; 47 U.S.C. § 551 *et seq*; *In re Verizon Internet Servs., Inc.*, 240 F. Supp. 2d 24, 37 (D.D.C. 2013) *rev'd sub nom.*  ISPs thus routinely notify their subscribers about their duty to cooperate with copyright holders and caution against violating copyright law.  And copyright holders—including major record labels and film studios—routinely enforce their copyrights against piracy in the federal court system by subpoenaing ISPs for subscriber information.  *See, e.g.*, *Sony BMG Music Entm't v. Tenenbaum*, 660 F.3d 487, 492 (1st Cir. 2011) ("Shortly after peer-to-peer networks first appeared, plaintiffs acknowledged the threat they posed to their industry and initiated a broad campaign to address the illegal infringement of copyrighted materials."); *Paramount Pictures Corp. v. Davis*, 234 F.R.D. 102, 104 (E.D. Pa. 2005) ("With the aid of other technological developments, the internet also has afforded users with opportunities to infringe on the rights of owners of copyrighted works, including motion pictures.").

them."[5]  ISPs' records "are the **only available evidence** that allows us to investigate who committed crimes on the Internet.  They may be the **only way to learn, for example, that a certain Internet address was used by a particular human being** to engage in or facilitate a criminal offense."  January 25, 2011 Statement from Jason Weinstein, Deputy Assistant Attorney General, before the Committee on Judiciary Subcommittee on Crime, Terrorism, and Homeland Security.[6]

The Government—and law enforcement in particular—also acknowledges that issuing a subpoena to the responsible ISP is the only way to identify the subscriber of an IP address. Plaintiff's forensics expert has affirmed that during the eleven years he spent investigating computer crimes, the government *__always__* had to obtain subscribers' identifying information from ISPs. *See* Paige Decl. at ¶¶ 13–16, 35.  And, every single case that Plaintiff has reviewed supports this conclusion.  *See, e.g.*, *United States v. Chamberlin*, No. 09-CR-6169CJS, 2010 WL 1904500, *2 (W.D.N.Y. May 12, 2010) (subpoenaing an ISP to identify IP address subscriber); *United States v. Bershchansky*, 958 F. Supp. 2d 354, 358 (E.D.N.Y. 2013) (same); *United States v. Thomas*, No. 5:12-CR-37, 2012 WL 4892850, *1 (D. Vt. Oct. 15, 2012) (same); *United States v. Ohlson*, No. 11-CR-225-RJA-JJM, 2011 WL 7555151, *1 (W.D.N.Y. Nov. 18, 2011) (same); *GWA, LLC v. Cox Commc'ns, Inc.*, No. 3:10-CV-741 WWE, 2010 WL 1957864, *1 (D. Conn. May 17, 2010) (same).  District courts across the country, including courts in this district, likewise recognize this, routinely explaining "the Court can think of no other reasonable way of

---

[5] *Beginner's Guide to Internet Protocol (IP) Addresses* at p. 4, available at https://www.icann.org/en/system/files/files/ip-addresses-beginners-guide-04mar11-en.pdf.; *American Registry for Internet Numbers Number Resource Policy Manual* at 4.2, available at https://www.arin.net/policy/nrpm.html#four2.

[6] Available at http://www.justice.gov/sites/default/files/testimonies/witnesses/attachments/01/25/11//01-25-11-crm-weinstein-testimony-re-data-retention-as-a-tool-for-investigating-internet-child-pornography-and-other-internet-crimes.pdf

discovering the infringer than by permitting Plaintiff discovery into the identity of Doe." *Voltage Pictures, LLC v. Does*, No. 13-cv-01121, 2013 WL 4028587, *3 (D. Colo. Aug. 7, 2013). The Southern District of New York very recently reaffirmed this point in the context of one of Plaintiff's cases, denying a motion to quash and explaining that "subpoenaing the ISP … is the *only* means to obtain identifying information" *Malibu Media, LLC v. Doe*, No. 1:15-cv-01834, 2015 WL 4403407, *2 (S.D.N.Y. July 20, 2015). *Accord Cobbler Nevada, LLC v. Does*, No. 2:15-cv-11871, 2015 WL 4276082, *1 (E.D. Mich. July 14, 2015) (same); *In re Malibu Media*, No. 15-cv-1855, 2015 WL 3605834, *4 (E.D.N.Y. June 8, 2015) (same); *Rotten Records, Inc. v. Doe*, No. 1:15-cv-0446, 2015 WL 3540007, *1 (W.D.N.Y. June 4, 2015) (same).

Prior to seeking leave to subpoena Verizon, Plaintiff searched for Defendant's IP address on various web search tools, including basic search engines like http://www.google.com. Plaintiff further conducted its own research on its ability to identify Defendant by reviewing numerous sources of authority, most of which have been discussed above (*e.g.*, legislative reports, agency websites, informational technology guides, governing case law, etc.). Plaintiff also discussed the issue at length with its computer forensics investigator—an individual who was tasked with the responsibility of investigating and identifying cybercriminals for over ten years. *See generally* Paige Decl. And, Plaintiff discussed these issues with at least two different ISPs.[7] In short, there is no way to obtain the identity of an internet subscriber except from the subscriber's internet service provider.

### 4.  Plaintiff is not Abusing this Court's Subpoena Power

In a last ditch effort to convince the Court to protect Defendant from having to participate in this action, he improperly and unfairly argues that Plaintiff is likely to use this Court's

---

[7] The ISPs with whom Plaintiff consulted confirmed their unique ability to identify their internet subscribers, but neither were willing to provide an affidavit absent court order. Should these communications be pertinent to the Court's analysis, Plaintiff can supply them upon request.

subpoena power as an instrument of abuse, the way certain so-called "copyright trolls" have done.[8]  More specifically, Defendant baselessly states that "Malibu's strategy and its business models are to extort, harass, and embarrass defendants to persuade defendants to pay settlements with plaintiffs instead of paying for legal assistance while attempting to keep their anonymity and defending against allegations which can greatly damage their reputations."  CM/ECF 10 at p. 14.  While this statement may be applicable to some copyright trolls with whom Plaintiff has no relation, it is 100% false as applied to Plaintiff.

      a.  <u>Plaintiff's Core Focus is on Producing, Selling, and Licensing its Products; it Litigates to Preserve its Business Not as a Numbers Game to Derive Income</u>

First, Plaintiff "is *not* [using the legal system as an instrument of abuse].  Malibu is an actual producer of adult films and owns valid copyrights….  A number of Plaintiff's copyrighted works have evidently been making the rounds on BitTorrent.  Plaintiff wants to put a stop to it.  So Plaintiff has hired a forensic investigator [and files lawsuits]."  *Malibu Media LLC v. Doe*, No. 13-12178, 2013 WL 3945978, *2–3 (E.D. Mich. July 31, 2013).  Plaintiff is itself responsible for conceptualizing, producing, selling, and licensing all of its own work as a part of its business; it does not simply "acquire" copyrights for litigation-purposes.  *See* Field Decl. at ¶ 5.  And, the overwhelming majority of Plaintiff's income is derived from its regular business—producing films for individual subscribers that pay membership fees and engaging in extensive licensing.  *Id.* at ¶¶ 7, 14.  Plaintiff's primary focus is on creating high quality niche adult content for its business, on growing and maintaining its customer base, and on growing and maintaining its licensing deals. Plaintiff litigates simply to preserve the viability of its business and put an

---

[8] In recent years, BitTorrent copyright litigation has received a bad reputation due to the unscrupulous tactics used by some so-called "copyright trolls." *See generally AF Holdings*, 752 F.3d 990 (D.C.C. 2014) (discussing the improper tactics used by Prenda Law and its principals); *Ingenuity 13 LLC v. Doe*, No. 2:12-cv-8333, 2013 WL 1898633 (C.D. Cal. May 6, 2013) (same).

end to the widespread infringement of its works—works that Plaintiff has invested tremendous time, effort, and money into creating. *See generally id.* Consistent with its goals, Plaintiff does not play a numbers game, but instead only sues the worst of its infringers, naming only <u>one</u> defendant per suit.[9] *Id.* at ¶ 15. Plaintiff has instructed its legal team not to pursue a case without adequate evidence and a good faith reasonable belief as to liability. *Id.* at ¶¶ 16–19. Consistent therewith, Plaintiff only sues individuals that unlawfully infringe numerous of Plaintiff's works over a significant time period (*i.e.*, those that are particularly threatening to Plaintiff's business). *Id.*

> b. <u>Plaintiff is Dedicated to Only Pursuing Liable Infringers; it Settles and Litigates in Good Faith</u>

Plaintiff is dedicated to only pursuing liable infringers and it settles and litigates in good faith. Defendant's Motion sites numerous cases, most of which do not even involve Plaintiff, to make it seem as though Plaintiff's only motive is to obtain defendants' identifying information in order to seek "quick, out-of-court settlements." These charges are demonstrably false; Plaintiff ***never*** extends a settlement offer to a defendant unless and until the defendant is served with a summons and copy of Plaintiff's complaint. Whenever settlements are reached prior to service, it is because the defendant or a defense attorney has contacted Plaintiff to discuss settlement. Of note, <u>Plaintiff has *never* settled with a pro se or unrepresented defendant in this district;</u> <u>undersigned has *only* settled Plaintiff's EDNY and SNDY cases with licensed attorneys</u> <u>advocating on behalf of defendants' interests.</u>[10] Further, Plaintiff has no interest in accepting

---

[9] When Plaintiff first began filing its lawsuits, it often commenced litigation against multiple infringers based upon judicial commentary in the Third Circuit. But Plaintiff has never joined hundreds or thousands of defendants into a single suit nor has it disregarded personal jurisdiction. <u>Regardless, Plaintiff has long since determined that the better course is to name only one defendant in each suit. For every lawsuit it files and every infringer it pursues, Plaintiff pays a $400 filing fee. This has been Plaintiff's consistent practice for years and the instant case is no exception.</u>

[10] Plaintiff's opposing counsel in the EDNY and SDNY have typically been very outspoken opponents of BitTorrent litigation. It would have been publicized if Plaintiff were misusing the court procedure or conducting itself

payment from innocent individuals and it *routinely* voluntarily dismisses cases rather than accept settlements when it obtains information to believe that the defendant offering a settlement is innocent or otherwise experiencing genuine financial hardship. *Id.* at ¶¶ 14–18. Courts have taken notice. *See, e.g.*, *Malibu Media, LLC v. Doe*, No. 14-cv-00259, 2014 WL 1689935, *5 (D. Colo. April 28, 2014) ("the Court has personally observed Plaintiff's willingness to settle and/or dismiss cases without payment of *any damages* where the defendant has come forward with exculpatory evidence"); *Malibu Media, LLC v. Doe*, No. 13-cv-01523, 2013 WL 4510363, *3 (D. Colo. Aug. 26, 2013) (same); *Malibu Media, LLC v. Does*, No. 12-cv-02598, 2013 WL 1777710, *7 n.3 (D. Colo. Feb. 12, 2013) ("the Court has also witnessed firsthand the Plaintiff's willingness to resolve cases without any monetary payment when a Defendant credibly denies infringement").

Moreover, litigants seeking to abuse the subpoena power will avoid litigation by dismissing a defendant who declines to settle. *See Malibu Media, LLC*, 2015 WL 4092417 at *3–4 (expressing concern over those who "quickly negotiate settlements on mass scale without any intention of taking the case to trial"). Yet Plaintiff actively litigates to the fullest extent necessary to preserve its business and protect its copyrights. Plaintiff regularly attends and participates in a litany of court proceedings and hearings throughout the country. Defendant's suggestion that most of Plaintiff's cases are dismissed "even without the issuances of a summons" is simply untrue. Plaintiff has taken well over 300 cases deep into discovery and is heavily litigating at least a dozen cases that may go to trial within the next year or two. Below is just a small sampling of cases and decisions, mostly from this year alone, which demonstrate Plaintiff's good faith litigation:

---

improperly. To the extent there remains doubt, Plaintiff will not oppose the Court's inquiries to defense counsel (or defendants) regarding this issue.

- *Malibu Media, LLC v. Tashiro*, No. 1:13-CV-00205-WTL (S.D. Ind.): After a lengthy evidentiary hearing, Plaintiff proved that the two defendants spoiled and suppressed material evidence and committed perjury regarding same. The court determined that the defendants' "extensive pattern" of misconduct coupled with Plaintiff's diligent and good faith pursuit of its "strong underlying copyright infringement claim" warranted the imposition of default judgment. *See* 2015 WL 2371597 (May 18, 2015)

- *Malibu Media, LLC v. Winkler*, No. 13-cv-03358 (D. Colo.): After discovery closed, court granted summary judgment in Plaintiff's favor regarding the infringement of 28 of its films. *See* 2015 WL 4245820 (July 14, 2015).

- *Malibu Media, LLC v. John Does*, No. 12-2078 (E.D. Pa.): Plaintiff won the first ever BitTorrent copyright infringement trial. *See* 950 F. Supp.2d 779 (June 18, 2013).

- *Malibu Media LLC v. Bui*, No. 1:13-cv-00162 (W.D. Mich.): Granting summary judgment in Plaintiff's favor regarding the infringement of 57 of its films. *See* CM/ECF 40 (May 14, 2014).

- *Malibu Media, LLC v. Huseman*, No. 1:13-cv-02695 (D. Colo.): Resolving dispute by stipulated final judgment following Plaintiff's filing of a motion for summary judgment. *See* CM/ECF 43, 50 (Dec. 19, 2014)

- *Malibu Media, LLC v. Harrison*, No. 1:12-cv-01117-WTL-DML (S.D. Ind.): After amassing three hundred and eighty five (385) docket entries, fully participating in a final pretrial conference, and submitting all trial materials, Plaintiff discovered forensic evidence showing that the defendant committed the alleged infringements. The parties settled just twenty days before trial after Defendant was specifically warned by the judge he would be sanctioned if at trial the jury found he committed perjury and Plaintiff demonstrated with 100% certainty he committed perjury by denying the existence of additional computers and drives which were being used for BitTorrent.

- *Malibu Media v. Ricupero*, No. 2:14-cv-821 (S.D. Ohio): In ruling on 16 different discovery motions, Judge Kemp commented on the extent to which the parties had litigated the issues before the Court: "[T]hese motions have resulted in the filing of 255 pages of briefing and exhibits. In fact, the motion for an extension of the expert disclosure deadline (Doc. 25) has resulted in the filing of 166 pages of briefing and exhibits, including three secondary motions…." CM/ECF 67, p. 7 (July 14, 2015).

- *Malibu Media, LLC v. Steiner*, No. 3:14-CV-186 (S.D. Ohio): After extensive briefing on the issue, overruling a defendant's motion for judgment on the pleadings and finding that "[u]nder Rule 17(b)(3)(A), Plaintiff has the capacity to sue in this forum." 2015 WL 2454268, at *1 (May 22, 2015).

- *Malibu Media, LLC v. Raleigh*, No 1:13-cv-360 (W.D. Mich.): After hotly contested discovery disputes, the Court agreed to re-open discovery, noting "the record shows that the parties have engaged in discovery focused on building or defending against

such a circumstantial case. Their discovery battles have been lengthy, hard-fought, and focused on exactly the fronts one would reasonably expect when rational parties attempt to build or defend a circumstantial case of copyright infringement. . . . What is clear to the Court is that neither side culpably neglected the case. Both sides worked diligently to advance their respective interests." CM/ECF 86 (May 19, 2015).

- *Malibu Media, LLC v. Doe*, No. 1:13-cv-06312 (N.D. Ill.): Plaintiff diligently litigated this case through discovery and is currently awaiting a ruling on its motion for summary judgment. *See* CM/ECF 147 (April 17, 2015).

- *Malibu Media, LLC v. Roldan*, No. 8:13-cv-03007 (M.D. Fla.): After Plaintiff conducted a series of depositions and discovered withheld evidence that suggested Plaintiff was wrongfully suing the infringer's son rather than the infringer himself, the Court acknowledged Plaintiff's diligent litigation efforts and granted it leave to file a second amended complaint naming the infringer and to dismiss the infringer's son. *See* CM/ECF 58 (Feb. 26, 2015) and CM/ECF 90 (April 27, 2015).

Plaintiff's litigation is <u>not</u> confined to outside the Second Circuit. Plaintiff has recently participated in various oral arguments and submitted detailed briefs on various substantive legal issues in numerous EDNY and SDNY cases.[11] And Plaintiff will be participating in an evidentiary hearing later this year. *See Malibu Media LLC v. Doe*, No. 1:14-cv-10155 (SDNY).

c. <u>Plaintiff uses Tactics to <i>Avoid</i> Defendant Embarrassment</u>

Defendant's suggestion that Plaintiff employs tactics to embarrass defendants is actually the exact opposite of the truth. Plaintiff <u>always</u> allows its defendants to litigate through discovery anonymously—appearing to the public as simply a "John Doe." *See* Field Decl. at ¶ 16. Defendant correctly notes on page 8 of his Motion that years ago Plaintiff included, as an exhibit to its complaints, a list of third-party pornographic videos that were infringed along with Plaintiff's works. But Plaintiff did not do this to cause embarrassment—indeed, the vast majority of the defendants were proceeding anonymously such that they would never have even

---

[11] *See, e.g.*, *Malibu Media, LLC v. Doe*, No. 1:15-cv-04380; *Malibu Media, LLC v. Doe*, No. 1:15-cv-00575; *Malibu Media, LLC v. Doe*, No. 1:15-cv-00562; *Malibu Media, LLC v. Doe*, No. 7:14-cv-08901; *Malibu Media, LLC v. Doe*, No. 1:14-cv-08905; *Malibu Media, LLC v. Crisfield*, No. 7:14-cv-08897; *Malibu Media, LLC v. Doe*, No. 1:15-cv-01834; *Malibu Media, LLC v. Doe*, No. 1:15-cv-01841; *Media, LLC v. Doe*, No. 1:15-cv-02624.

been personally linked to the third-party titles. Rather, Plaintiff included this information to establish compliance with Rule 11, undermine certain affirmative defenses, and avoid disputes in the discovery process. And, Plaintiff included this information because several judges expressly _authorized_ and _approved_ of Plaintiff's doing so, and at least one court held that the failure to include that sort of information could violate Rule 11(b)(3).[12] In any case, undersigned has _never_ included this information, and Plaintiff stopped including it years ago when two Wisconsin District Judges expressly disagreed with a half dozen other judges and directly disapproved of the strategy. Plaintiff determined that the judicial split notwithstanding, it did not want to press forward with a tactic that some judges could deem improper.

### d. Plaintiff Employs Deliberate and Good Faith Efforts to Always Comply with Court Orders

Defendant advises that "[w]hen courts have attempted to place restrictions on the subpoena to prevent Malibu from abusing the process to extort defendants, Malibu has flagrantly disregarded them." CM/ECF 10 at p. 8. Plaintiff respectfully disputes this assertion and avers that neither it nor its counsel has ever intentionally disregarded a court order. Defendant's contention is preposterous and his purported "proof" is meritless. Defendant discusses the violation of an order in _Patrick Collins, Inc. v. Doe_, 288 F.R.D. 233 (E.D.N.Y. 2012). _See_ CM/ECF 10 at p. 8. But that case involved different counsel than the case at hand. And, like the other case mentioned by Defendant, the case involved a demonstrably accidental and inadvertent violation. In that Southern District of Ohio case, Plaintiff's Ohio counsel indeed inadvertently

---

[12] _See Malibu Media, LLC_, No. 12-2078, 2013 WL 30648, *11 (E.D. Pa. Jan. 3, 2013) ("Malibu has included this material in order to show a pattern or practice of infringement by Doe 13. It is not suing upon these infringements; it is making an allegation which may become evidence to support its claim to relief"); _see also Malibu Media, LLC v. Wilson_, No. 1:13-cv-00357, CM/ECF 22 at pp. 7:19–25, 8:1–17 (W.D. Mich. Sept. 30, 2013) (same); _Malibu Media, LLC v. John Doe_, No. 2:13-cv-00055, CM/ECF 22, p. 8 (N.D. Ind. Aug. 16, 2013) (same). _See Ingenuity 13 LLC v. Doe_, No. 2:12-cv-08333, 2013 WL 765102, *4 (C.D. Cal. Feb. 7, 2013) (sanctioning an attorney under Rule 11 for _not_ including additional evidence, the very sort of evidence covered by Plaintiff's Exhibit "C").

disclosed a defendant's name contrary to court order, but he recognized the oversight within five (5) minutes and *immediately* advised opposing counsel and called the clerk's office's emergency after-hours hotline to rectify the unintended error. Plaintiff's Ohio counsel followed up with opposing counsel and the clerk of court throughout the evening to ensure that the document would be sealed by early the next morning (a Saturday). The defendant's name was publicly viewable for, at most, a few hours on a Friday night. To the best of undersigned's knowledge, Plaintiff has violated court orders in only six out of over 4,000 cases and scores of thousands of papers that it has filed, and each such isolated violation occurred in a different district and involved different counsel. And, in each such case, Plaintiff and its counsel took immediate and deliberate steps to remedy the accidental violations. No court has ever sanctioned Plaintiff for violating a court order, and knowledgeable courts expressly reject the identical arguments Defendant makes here. *See, e.g.*, *Malibu Media, LLC v. Doe*, No. 14-cv-00223, 2014 WL 4682793, *1 (D. Md. Sept. 18, 2014) ("Malibu has complied with these procedures and this Court is unaware of *any* allegations of abuse.").

Authority teaches that courts should grant Plaintiff's motion for expedited discovery and recognize that "[e]ven if there is no ultimate liability, Plaintiff has a constitutional right to file a lawsuit and engage in discovery to determine whether a defendant or someone using a defendant's IP address infringed on its protected works." *Malibu Media*, 2014 WL 1689935 at *5, *see also Davis v. Kelly*, 160 F.3d 917, 921 (2d Cir. 1998) (holding that courts should not dismiss suits against unnamed defendants or defendants identified only as John Does until the plaintiff is given "some opportunity for discovery to learn the identities").

In short, without the ability to identify the infringers, copyright owners would have a right without a remedy. This would violate Chief Justice Marshall's, perhaps the most esteemed

jurist in U.S. history, often cited rule that "the very essence of civil liberty certainly consists in the right of every individual to claim the protection of the laws, whenever he received an injury." *Marbury v. Madison*, 1 Cranch 137, 1803 WL 893, *17 (U.S. 1803).  Chief Justice Marshall continued: "The government of the United States has been emphatically termed a government of laws, and not of men.  It will certainly cease to deserve this high appellation, if the laws furnish no remedy for the violation of a vested legal right."  *Id.*  The U.S. still deserves that high appellation because it still creates remedies when vested rights have been infringed.  The case in front of the bar is no exception; our government has provided copyright owners with the ability to ascertain the identity of infringers through a Rule 45 subpoena.

## V.  **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendant's Motion to Quash.

Respectfully submitted,

By: /s/ Jacqueline M. James
Jacqueline M. James, Esq. (1845)
The James Law Firm, PLLC
445 Hamilton Avenue
Suite 1102
White Plains, New York 10601
T: 914-358-6423
F: 914-358-6424
E-mail: jjameslaw@optonline.net
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on October 27, 2015, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that service was perfected on all counsel of record and interested parties through this system.

By:     /s/ Jacqueline M. James