UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X

MALIBU MEDIA, LLC,

                              Plaintiff,

       -against-

JOHN DOE, subscriber assigned IP
address 98.116.160.61,

                            Defendant.
----------------------------------------------------------------------X

**MEMORANDUM
AND ORDER**
15-CV-3504 (JFB)(SIL)

**LOCKE, Magistrate Judge:**

Presently before the Court in this copyright infringement action is Defendant John Doe's ("Defendant" or "Doe") Motion to Quash Subpoena and Motion for a Protective Order, which Plaintiff Malibu Media, LLC ("Plaintiff" or "Malibu Media") opposes.  *See* Docket Entry ("DE") [10], [14].  For the reasons set forth herein, Defendant's motion is denied.

## I.  BACKGROUND

The relevant factual background, as well as a description of the relevant "BitTorrent" technology, is discussed at length in this Court's July 29, 2015 Order granting Plaintiff's Motion for Expedited Discovery (the "Discovery Order"), and is incorporated herein by reference.  *See* DE [9].  Nevertheless, the following facts provide relevant context for the instant motion.

### A.  <u>The Parties and the Discovery Order</u>

Malibu Media is a California corporation engaged in the production and distribution of adult erotic films through its website "X-art.com."  *See* Declaration of

Colette Pelissier Field (the "Field Decl."), DE [16], ¶¶ 3-7. Through monthly or annual subscriptions, Malibu Media offers access to an online library of copyrighted video content. *Id.* at ¶ 6. According to Plaintiff, piracy of its copyrighted content is "a serious threat to [its] business because more people steal [Malibu Media's] works via BitTorrent than pay for subscriptions." *Id.* at ¶ 10. Relevant for purposes of this action, Plaintiff alleges that Defendant infringed upon the copyrights that Malibu Media owns for eighteen original works of authorship. *See* Compl., DE [1], ¶ 29, Ex. B.

The Doe Defendant is the Internet subscriber assigned the Internet Protocol ("IP") address 98.116.160.61. *Id.* at Ex. A. Although Malibu Media "only knows defendant by his, her or its IP Address," *see id.* at ¶ 9, by establishing a direct connection with Defendant's IP address, Malibu Media's investigator, IPP International UG ("IPP International"), downloaded from Defendant one or more bits of each of the eighteen digital movie files identified in the Complaint. *Id.* at ¶¶ 18-20. According to Plaintiff, between February 10, 2015 and May 23, 2015, Defendant illegally copied and distributed eighteen movies to which Malibu Media owns the copyright. *Id.* at ¶ 20. To that end, Plaintiff alleges that "Defendant is a habitual and persistent BitTorrent user and copyright infringer." *Id.* at ¶ 25. Accordingly, by way of Complaint dated June 16, 2015, Malibu Media commenced this action against the Doe Defendant, alleging one count of direct copyright infringement in violation of 17 U.S.C. §§ 106, 501. *Id.* at ¶¶ 28-33.

Although Plaintiff does not know the Doe Defendant's identity, Malibu Media alleges that "Defendant's Internet Service Provider can identify the Defendant." *Id.* at ¶¶ 9, 10. Accordingly, on July 13, 2015, Plaintiff filed a motion seeking leave to serve a third-party subpoena on Verizon Internet Services ("Verizon") pursuant to Fed. R. Civ. P. 26(f) (the "Discovery Motion"). *See* DE [4]. Specifically, Malibu Media sought permission to "demand the true name and address of the Defendant." *See* Memorandum of Law in Support of Plaintiff's Motion for Leave to Serve a Third Party Subpoena Prior to a Rule 26(f) Conference ("Discovery Mot. Mem."), DE [5], at 4. According to Plaintiff, "without [that] information, Plaintiff cannot serve the Defendant nor pursue this lawsuit to protect its valuable copyrights." *Id.*

On July 29, 2015, the Court granted the Discovery Motion, holding that "Malibu Media has demonstrated good cause for limited expedited discovery designed to ascertain the names and addresses of the Doe Defendants." Discovery Order at 9.[1] However, in light of "the high risk of false positives in the identification process . . . combined with the sensitive nature of the copyright material at issue," the Court issued a Protective Order governing the manner in which such information would be disclosed. *Id.* at 10-12. Pursuant to the Protective Order, within sixty days of receiving a subpoena from Malibu Media, Defendant's Internet Service Provider ("ISP") was required to provide notice thereof to Defendant, who is the Internet subscriber associated with the IP address at issue. *Id.* at 11. Upon receiving such

---

[1] Certain references in the Discovery Order are to more than one Defendant because Malibu Media filed numerous similar lawsuits followed by the same motion for expedited discovery concerning the identities of various Doe Defendants. *See* Discovery Order at 1-2 (identifying the fifteen cases to which the Discovery Order applies).

notice from the ISP, Defendant then had sixty days to file any motion with this Court seeking to contest the subpoena or litigate the subpoena anonymously. *Id.* If, after sixty days, Defendant did not contest disclosure of his identity, the ISP was required to either produce information responsive to the subpoena or file its own motion to quash within ten days. *Id.* at 12.

### B. <u>The Instant Motion</u>

On or about August 7, 2015, Defendant received a letter from Verizon informing him that Verizon received a subpoena from Malibu Media seeking disclosure of Defendant's name and address (the "Verizon Subpoena"). *See* Motion to Quash Subpoena and Motion for a Protective Order by Defendant John Doe ("Def.'s Mot."), DE [10], ¶ 2. On September 28, 2015, Defendant filed the instant motion seeking an Order: (i) quashing the Verizon Subpoena pursuant to Fed. R. Civ. P. 45(d), and (ii) protecting his identity from disclosure pursuant to Fed. R. Civ. P. 26(c). *Id.* at ¶¶ 55, 62. According to Defendant, he "did not copy or transmit Plaintiff's copyrighted works . . . and was not a part of Plaintiff's alleged BitTorrent 'swarm.'" *Id.* at ¶ 4. Defendant further argues that "Plaintiff has failed to show 'good cause' for the expedited discovery [provided for in the Discovery Order] because it couldn't establish a *prima facie* claim and its claim that there is no alternative means of obtaining the desired information was inadequate." *Id.* at ¶ 63. To that end, relying on a 2008 paper published by the University of Washington Department of Computer Science, Defendant argues, among other things, that the "common approach for identifying infringing users in the popular BitTorrent file sharing network is not

4

conclusive." *Id.* at ¶¶ 8-11 (quoting Tadayoshi Kohno, Arvind Krishnamurthy & Michael Piatek, University of Washington, *Challenges and Directions for Monitoring P2P File Sharing Networks – or – Why My Printer Received a DMCA Takedown Notice* (available at www.dmca.cs.washington.edu/dmca_hotsec08.pdf) [hereinafter Univ. of Wash. Paper]). According to Defendant, "practically any Internet user[] can be framed for copyright infringement and even without being explicitly framed, innocent users may still be identified as an infringer even if they have never used [peer-to-peer] software." *Id.* at ¶ 8.

In opposition, Plaintiff argues, among other things: (i) that Defendant lacks standing to oppose the Verizon Subpoena; (ii) that the Court did not err in concluding that good cause existed to allow for expedited discovery; and (iii) that Defendant fails to identify a legally cognizable reason to quash the Verizon Subpoena pursuant to Fed. R. Civ. P. 45. *See* Plaintiff's Response in Opposition to Defendant's Motion to Quash ("Pl.'s Opp'n"), DE [14], at 1-2. Malibu Media further argues that the University of Washington Paper does not actually support Defendant's position because "Plaintiff used the exact process that the study recommends . . . ." *Id.* at 5. Plaintiff does not oppose allowing Defendant to proceed anonymously through the conclusion of discovery. *Id.* at 1.

On October 6, 2015, this Court stayed the directives and relief provided for in the Discovery Order "[b]ecause the arguments advanced in the Doe Defendant's Motion to Quash raise[d] serious questions as to whether good cause exists . . . to permit the expedited pre-answer discovery provided for in [the Discovery Order] . . .

.["]2  *See* DE [12].  The Court held an evidentiary hearing on Defendant's motion on April 20, 2016.  *See* DE [30].  At the evidentiary hearing, Plaintiff offered testimony from:  (i) Michael Patzer, Senior Assistant Architect for the German copyright infringement detection firm Excipio, which designed the monitoring software that Malibu Media relied upon in detecting Defendant's allegedly infringing activity; and (ii) Patrick Paige, Plaintiff's forensic expert, who conducted tests to verify the accuracy of Excipio's monitoring software.  *See* Transcript of April 20, 2016 Evidentiary Hearing ("Tr."), DE [34-1], at 6:21-8:4, 41:3-6, 106:6-15.  Although the Court invited testimony from the authors of the University of Washington Paper, Defendant did not present any witnesses.  Following the evidentiary hearing, the parties submitted post-hearing briefs.  *See* Defendant's Post-Hearing Memorandum ("Def.'s Supp. Br."), DE [33]; Plaintiff's Supplemental Brief ("Pl.'s Supp. Br."), DE [34].

## II.  DISCUSSION

At the outset, the Court notes that the parties disagree regarding the applicable standard.  Although styled as a motion to quash pursuant to Fed. R. Civ. P. 45, Defendant claims that its "arguments on the 'good cause' inquiry [are] based on Rule 26."  *See* Defendant's Reply to Plaintiff's Opposition to Motion to Quash ("Def.'s Reply Mem."), DE [17], at 1.  Defendant also "asks that this Court, among other things, reconsider [its] finding" that good cause existed to permit expedited discovery.  Def.'s Mot. ¶ 21; *see also* Def.'s Reply Mem. at 1 (observing that the "court

---

2 The October 6, 2015 Order applied to this case and all other cases brought by Malibu Media against John Doe defendants on similar grounds currently pending in this Court.  *See* DE [12] at 3.

has discretion to reconsider its orders"). Therefore, the Court reviews the instant motion as both a motion for reconsideration of the Court's Discovery Order and a motion to quash the already issued Verizon Subpoena. However, regardless of which standard applies, for the reasons set forth herein, Defendant's motion is denied.

## A. <u>Motion for Reconsideration</u>

Motions for reconsideration are governed by Local Civil Rule 6.3, which requires that the movant "set forth concisely the matters or controlling decisions which the party believes the court has overlooked." *Pickering-George v. Attorney Gen. of U.S.*, No. 10-CV-1103, 2011 WL 52363, at *1 (E.D.N.Y. Jan. 5, 2011) (quoting Local Civ. R. 6.3) (internal alteration omitted). Therefore, to prevail on a motion for reconsideration, "a movant must show that the Court has overlooked controlling decisions or factual matters that, had they been considered, might reasonably have altered the result." *Paradysz Matera Co., Inc. v. Robertson*, No. 04-CV-1779, 2004 WL 1713902, at *1 (S.D.N.Y. July 29, 2004) (citing *Range Road Music, Inc. v. Music Sales Corp.*, 90 F. Supp. 2d 390, 391-92 (S.D.N.Y. 2000)); *see also Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) ("[R]econsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court."). It is well-established that "[t]he standard for a motion for reconsideration is demanding, and should be 'narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the Court.'" *Henry v. Alliance for Health, Inc.*, No. 05-CV-1264,

2006 WL 3050873, at *1 (E.D.N.Y. Oct. 18, 2006) (quoting *Wechsler v. Hunt Health Sys., Ltd.*, 186 F. Supp. 2d 402, 410 (S.D.N.Y. 2002)); *see also Hunt v. Enzo Biochem, Inc.*, No. 06 Civ. 170, 2007 WL 1346652, at *1 (S.D.N.Y. May 7, 2007) ("A motion for reconsideration is not . . . a second bite at the apple for a party dissatisfied with a court's ruling.") (internal quotation omitted). Ultimately, motions for reconsideration "are committed to the sound discretion of the district court." *Image Processing Techs. v. Canon Inc.*, No. 10-CV-3867, 2012 WL 253097, at *1 (E.D.N.Y. Jan. 26, 2012).

Here, relying primarily on the University of Washington Paper, Defendant "asks that this Court . . . reconsider [its] finding of good cause" to allow for expedited discovery because "Plaintiff has failed to . . . establish a *prima facie* claim and its claim that there is no alternative means of obtaining the desired information was inadequate." Defs.' Mot. ¶¶ 21, 63. In opposition, Plaintiff argues that, insofar as Defendant's motion is construed as a motion for reconsideration, it: (i) is untimely, and (ii) "fails to argue any basis upon which the Court may find it committed clear error or abused its discretion in finding that Plaintiff demonstrated 'good cause' to serve the subpoena." Pl.'s Opp'n at 9.

As an initial matter, Local Civil Rule 6.3 provides that, "[u]nless otherwise provided by the Court or by statute or rule, a notice of motion for reconsideration . . . shall be served within fourteen (14) days after the entry of the Court's determination of the original motion . . . ." Local Civil Rule 6.3. Here however, the Court's July 29, 2015 Protective Order provided that, upon being informed of the Verizon Subpoena by his ISP, Defendant had "a period of 60 days to file any motions with this Court

8

contesting the Subpoena (including a motion to quash or modify the Subpoena), as well as any request to litigate the Subpoena anonymously." Discovery Order at 11-12. Because Defendant received notification of the Verizon Subpoena on August 7, 2015, the instant motion, which Defendant filed on September 28, 2015, is timely. Further, because of the unusual posture of the case, in that Plaintiff is seeking pre-answer discovery, Defendant's motion for reconsideration is his first chance to make his substantive arguments. Accordingly, reconsideration is appropriate. Nevertheless, for the reasons that follow, the analysis and conclusions contained in the University of Washington Paper do not alter the Court's determination that good cause exists to allow for limited expedited discovery.[3]

In the University of Washington Paper, the authors analyze "the methods by which copyright holders currently monitor the BitTorrent file sharing network," and ultimately conclude that "a common approach for identifying infringing users is not conclusive." *See* Univ. of Wash. Paper § 1. In reaching their conclusion, the authors differentiate between "direct detection" and "indirect detection" of copyright infringers. *Id.* at § 2. Whereas direct detection "involves connecting to a peer . . . and then exchanging data with that peer," indirect detection "relies on the set of peers returned by the coordinating tracker [of a BitTorrent swarm] only, [and] treating this list as authoritative as to whether or not IPs are actually exchanging data within the swarm." *Id.* According to the authors, "[t]he main weakness in current methods of

---

[3] Defendant has not identified any other controlling law or facts that the Court failed to consider in its Discovery Order. Therefore, the instant analysis is limited to whether the University of Washington Paper is sufficient to establish that good cause does not exist to allow for expedited discovery of the Doe Defendant's identification information.

detecting copyright infringement in BitTorrent appears to be the treatment of *indirect reports* as conclusive evidence of participation." *Id.* at § 4 (emphasis added). To that end, the authors note that "direct detection is more conclusive . . . ." *Id.* at § 2. Accordingly, the authors ultimately conclude that "[a] more thorough approach to detecting infringement in BitTorrent would be to . . . download data directly from the suspected user and verify its contents." *Id.* at § 6.1.

Relying on the University of Washington Paper, Defendant claims that "the common approach for identifying infringing users in the popular BitTorrent file sharing network is not conclusive" and that "practically any Internet user[] can be framed for copyright infringement and even . . . innocent users may still be identified as an infringer even if they have never used [peer-to-peer] software." Defs.' Mot. ¶ 8. According to Defendant, "[t]he research results demonstrate several simple techniques that a malicious user could use to frame arbitrary IP addresses as network endpoints which are infringing the copyrights." *Id.* at ¶ 9. However, at the evidentiary hearing, Patzer provided detailed, credible testimony regarding Excipio's copyright infringement detection methods, and explained why the concerns identified in the University of Washington Paper do not apply to Excipio's methods. *See* Tr. 30:6-39:11.

According to Patzer, indirect detection, which was addressed in the University of Washington Paper, involves connecting to a "tracker," which contains a file listing all of the IP addresses seeding the relevant torrent file, and then pursing action against each of the IP addresses identified on the list. *Id.* at 33:12-35:20. However,

when relying on indirect detection, it is "not verified that any of the clients are sharing the content." *Id.* at 35:18-20. According to Patzer, this method results in action against "IP addresses appearing on the lists which are not sharing content." *Id.* at 37:20-24. To that end, Patzer testified that "the ills that were discussed [in the University of Washington Paper], and the problems of false positives, . . . are related to indirect monitoring." *Id.* at 42:19-23.

In contrast, Patzer testified that Excipio has adopted the "exact procedure" recommended in the University of Washington Paper by relying on direct methods of detection to identify copyright infringers, including Defendant in this action. *Id.* at 39:4-10, 42:13-15. In employing a direct detection method, Excipio "do[es] a real connection" with the seeder and "actually exchange[s] data." *Id.* To that end, Patzer testified that "[w]hen [Excipio has] collected IP addresses, [it] will connect to every single IP address in the list." *Id.* at 36:16-17. By actually exchanging data with the seeder, Excipio "can be sure that person or that IP address has really shared that content we were looking for." *Id.* at 39:4-8. Indeed, Patzer testified that "at no time worldwide has it ever been proven that any of the IP addresses that [Excipio has] indicated shared the content that the client asked [Excipio] to verify as being inaccurate." *Id.* at 45:3-11. Moreover, to the extent that the University of Washington Paper identifies methods of "spoofing" IP addresses so that innocent users are framed, Patzer testified that, by making a direct connection to the seeder, "it is not possible" for such misidentification of IP addresses to occur. *Id.* at 40:14-18.

Because Excipio employs the exact method that the University of Washington Paper recommends to identify copyright infringers, Defendant's argument that "the common approach for identifying infringing users in the popular BitTorrent file sharing network is inconclusive" lacks merit. *See* Defs.' Mot. ¶ 11; Tr. 30:6-39:11. Therefore, the University of Washington Paper does not change the Court's conclusion that good cause exists to allow for the limited expedited discovery provided for in the July 29, 2015 Discovery Order. Accordingly, while the Court grants Defendant's motion for reconsideration of its July 29, 2015 Discovery Order based on the arguments above, upon reconsideration, the Court adheres to its original decision.

### B. <u>Motion to Quash Subpoena</u>

Next, the Court considers the Defendant's motion under the motion to quash standard. Pursuant to Fed. R. Civ. P. 45, a court "must quash or modify a subpoena that: (i) fails to allow reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter . . . ; or (iv) subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(i)-(iv). The party issuing the subpoena bears the initial burden of demonstrating "that the information sought is relevant and material to the allegations and claims at issue in the proceedings." *Night Hawk Ltd. v. Briarpatch Ltd.*, No. 03 Civ. 1382, 2003 WL 23018833, at *8 (S.D.N.Y. Dec. 23, 2003). Once the subpoena's relevance has been established, "the party seeking to quash . . . bears the burden of demonstrating that the subpoena is over-broad, duplicative, or unduly burdensome." *Kingsway Fin. Servs., Inc. v. Pricewaterhouse-Coopers LLP*, No. 03 Civ.

5560, 2008 WL 4452134, at *4 (S.D.N.Y. Oct. 2, 2008). Ultimately, "[d]ecisions to limit discovery as overbroad, duplicative, or unduly burdensome are left to the sound discretion of the trial judge." *Corbett v. eHome Credit Corp.*, No. 10-CV-26, 2010 WL 3023870, at *3 (E.D.N.Y. Aug. 2, 2010).

Here, insofar as Defendant seeks to quash the Verizon Subpoena pursuant to Fed. R. Civ. P. 45, Defendant only argues that he will be unduly burdened in "proving a third party's use of his IP address" if his identifying information is disclosed to Verizon. *See* Def.'s Mot. ¶ 42. Nevertheless, in similar situations, other courts have considered whether a defendant's identity, including the defendant's name and address, was "privileged or otherwise protected information" such that a subpoena to a non-party ISP should be quashed. *See, e.g.*, *Malibu Media, LLC v. John Doe Subscriber Assigned IP Address 24.90.139.137*, No. 15 Civ. 7788, 2016 WL 1651869, at *2 (S.D.N.Y. Apr. 26, 2016) (analyzing "whether the First Amendment protects an internet subscriber's identity from disclosure" in denying the defendant's motion to quash pursuant to Fed. R. Civ. P. 45). Therefore, the Court considers whether compliance with the Verizon Subpoena would result in: (i) an undue burden for Defendant, or (ii) the disclosure of privileged or otherwise protected information.

1. Whether Defendant will be Subjected to Undue Burden as a Result of the Verizon Subpoena

According to Defendant, if his "identifying information is given to Plaintiff, [he] will be subjected to the undue burden of proving [a] third party's abuse of his IP address, which is practically impossible for Defendant given Defendant's limited knowledge on internet and BitTorrent even if his IP address was used by unknown

13

malicious internet users." Def.'s Mot. ¶ 42. However, it is well-established that, "[t]he general rule is that a party does not have standing to object to a subpoena issued to a third-party witness unless the movant has alleged some personal privacy right or privilege to the documents sought." *McNerney v. Archer Daniels Midland Co.*, 164 F.R.D. 584, 587 (W.D.N.Y. 1995) (citing *Langford v. Chrysler Motors Corp.*, 513 F.2d 1121 (2d Cir. 1975)); *see also Revander v. Denman*, No. 00 Civ. 1810, 2004 WL 97693, at *1 (S.D.N.Y. Jan. 21, 2004) (observing that "a party generally does not have standing to challenge a subpoena issued to a third-party witness unless a personal privacy right or privilege is implicated"). To that end, even where the defendant "has alleged some personal privacy right or privilege to the documents sought," *see McNerney*, 164 F.R.D. at 587, the defendant still lacks standing to oppose a third-party subpoena on undue burden grounds. *See Malibu Media, LLC v. John Doe No. 4*, No. 12 Civ. 2950, 2012 WL 5987854, at *2 (S.D.N.Y. Nov. 30, 2012) ("This Court agrees with Malibu that Doe No. 4 lacks standing to quash the subpoena [served on Verizon] on undue burden grounds."); *John Doe Subscriber Assigned IP Address 24.90.139.137*, 2016 WL 1651869, at *2 n.1 (holding that the defendant lacked standing to oppose a subpoena on undue burden grounds, but analyzing whether the defendant had a privacy right to the discovery sought); *see also Malibu Media, LLC v. John Does 1-21*, No. 12-CV-835, 2012 WL 3590902, at *2 (D. Colo. Aug. 21, 2012) ("Even where a party has standing to quash a subpoena based on privilege or a personal right, he or she lacks standing to object on the basis of undue burden."); *Malibu Media, LLC v. John Does 1-15*, No. 12-CV-2077, 2012 WL 3089383, at *9 (E.D.

Pa. July 20, 2012) ("Defendant is not faced with an undue burden because the subpoena is directed at the internet service provider and not the Defendant.").

Here, Defendant lacks standing to oppose the Verizon Subpoena on undue burden grounds. Although the Verizon Subpoena is directed to his ISP, Defendant claims that he "will be subjected to the undue burden of proving [a] third party's abuse of his IP address . . . ." Def.'s Mot. ¶ 21. However, because "the burden of literal compliance with this subpoena falls to a third-party, Verizon," Doe lacks standing to oppose the Verizon Subpoena on undue burden grounds. *John Doe No. 4*, 2012 WL 5987854, at *2; *see also John Does 1-15*, 2012 WL 3089383, at *8 ("It is the service provider that is compelled to disclose the information, and thus, its prerogative to claim an undue burden."). Therefore, Defendant's motion to quash insofar as he claims that the Verizon Subpoena results in an undue burden is denied.

  2. Whether the Verizon Subpoena Requires Disclosure of Privileged or Otherwise Protected Information

The Supreme Court has "recognized that the First Amendment protects anonymous speech." *Sony Music Entm't Inc. v. Does 1-40*, 326 F. Supp. 2d 556, 562 (S.D.N.Y. 2004) (citing *Buckley v. Am. Constitutional Law Found., Inc.*, 525 U.S. 182, 200, 119 S. Ct. 636, 646 (1999)). Moreover, "[i]t is well-settled that the First Amendment's protection extends to the Internet." *Id.* (citing *Reno v. Am. Civil Liberties Union*, 521 U.S. 844, 870, 117 S. Ct. 2329, 2344 (1997)). Nevertheless, "[t]he First Amendment . . . does not protect copyright infringement, and the Supreme Court . . . has rejected First Amendment challenges to copyright infringement actions." *Id.* (citing *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539,

555-56, 105 S. Ct. 2218, 2228 (1985)); *see also Arista Records, LLC v. Doe 3*, 604 F.3d

110, 118 (2d Cir. 2010) ("The First Amendment does not . . . provide a license for

copyright infringement."); *Malibu Media, LLC v. John Does 1-11*, No. 12 Civ. 3810,

2013 WL 3732839, at *5 (S.D.N.Y. July 16, 2013) ("Courts in this District have

recognized that internet users have a limited First Amendment privacy interest in

anonymous internet usage, including the use of peer-to-peer file-sharing networks,

but this interest does not protect those who use their anonymity to infringe the

copyrights of others.").   To that end, in evaluating whether to quash a subpoena

issued to an ISP seeking the defendant's identity, courts in the Second Circuit

consider the following factors:

> (1) a concrete showing of a prima facie claim of actionable harm; (2)
> specificity of the discovery request; (3) the absence of alternative means
> to obtain the subpoenaed information; (4) a central need for the
> subpoenaed information to advance the claim; and (5) the party's
> expectation of privacy.

*Sony Music*, 326 F. Supp. 2d at 564-65; *see also Arista Records, LLC*, 604 F.3d at 119

(holding that the *Sony Music* standard "constitutes an appropriate general standard

for determining whether a motion to quash, to preserve the objecting party's

anonymity, should be granted"); *John Doe No. 4*, 2012 WL 5987854, at *3 (applying

the *Sony Music* factors in denying the defendant's motion to quash a subpoena

seeking disclosure of the defendant's identity).   For the reasons set forth herein, the

Court concludes that the *Sony Music* factors mandate denial of Defendant's motion

to quash.

*i.*        *Whether Plaintiff Establishes a* Prima Facie *Claim of Harm*

To establish a *prima facie* claim for copyright infringement, a plaintiff must establish: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Arden v. Columbia Pictures Indus., Inc.*, 908 F. Supp. 1248, 1257 (S.D.N.Y. 1995); *see also Kwan v. Schlein*, 634 F.3d 224, 229 (2d Cir. 2011) (discussing elements of a *prima facie* copyright infringement claim). Relevant to this action, "the use of [peer-to-peer] systems to download and distribute copyrighted music has been held to constitute copyright infringement." *Sony Music*, 326 F. Supp. 2d at 565.

Here, Plaintiff adequately alleges a *prima facie* case of actionable harm against the Doe Defendant for copyright infringement. According to Plaintiff, Malibu Media is the "registered owner" of the copyrights to the eighteen movies that Defendant allegedly illegally downloaded and distributed. *See* Compl. ¶¶ 2, 20-21. Plaintiff further alleges that, "Defendant downloaded, copied, and distributed a complete copy of Plaintiff's movies without authorization . . . ." *Id.* at ¶ 20. To that end, at the evidentiary hearing, Patzer offered credible testimony regarding the methods that Excipio used on behalf of Malibu Media in identifying the Doe Defendant's IP address as an infringer of its copyrighted material. *See* Tr. 8:5-16:16. Accordingly, Plaintiff's allegations and evidence submitted in support thereof are sufficient at this juncture to establish a *prima facie* claim for copyright infringement against Defendant. *See John Does 1-11*, 2013 WL 3732839, at *6 ("Plaintiff has made a concrete, prima facie case of copyright infringement by alleging ownership of the registered copyright and

alleging unlawful downloading, copying, and distribution of this work by specifying the type of technology used, the IP address from which the file was accessed and shared, and the date and time of the infringement."); *In re BitTorrent Adult Film Copyright Infringement Cases*, 296 F.R.D. 80, 87 (E.D.N.Y. 2012) ("Plaintiffs . . . have set forth *prima facie* claims of actionable harm by alleging ownership of registered, copyrighted works that have been infringed."); *John Wiley & Sons, Inc. v. Doe Nos. 1-30*, 284 F.R.D. 185, 189 (S.D.N.Y. 2012) (holding that the plaintiff established a *prima facie* claim of copyright infringement by alleging its ownership of the copyrighted material and "specific details regarding unlawful copying and distribution of this work").

Relying on *Next Phase Distribution, Inc. v. John Does 1-27*, 284 F.R.D. 165 (S.D.N.Y. 2012), Defendant argues in opposition that "judges in [the] S.D.N.Y. are seriously questioning the eligibility of the copyright protection for obscene motion pictures." *See* Def.'s Reply Mem. at 4. However, in *Next Phase Distribution, Inc.*, the court held that, although "the case law is unsettled regarding whether pornography may legitimately be copyrighted, for the limited purposes of this Motion for Discovery, the fact that [the plaintiff] is the registered copyright owner of the Motion Picture satisfies the requirement of a *prima facie* showing of copyright infringement." 284 F.R.D. at 171 n.5. Indeed, the court allowed the plaintiff to serve a subpoena on the defendant's ISP because the plaintiff "alleged a *prima facie* case of copyright infringement and it [could not] identify [the John Doe defendant] without a court-ordered subpoena." *Id.* Similarly, Malibu Media's allegations that it is the registered

owner of the copyrights at issue in this action are sufficient to allege a *prima facie* case for copyright infringement. *See also In re BitTorrent Adult Film Copyright Infringement Cases*, 296 F.R.D. at 87 n.8 ("For purposes of this analysis, it is assumed that plaintiffs' works are entitled to copyright protection, though that may be an open question.").

Defendant further contends that "Malibu has not established a violation by the individual *to whom the relevant IP address is registered*." Def.'s Mot. ¶ 28 (emphasis in original). To that end, courts have acknowledged that "[t]he fact that a copyrighted work was illegally downloaded from a certain IP address does not necessarily mean that the owner of that IP address was the infringer." *Media Prods., Inc. v. Does 1-26*, No. 12 Civ. 3719, 2012 WL 2190613, at *1 (S.D.N.Y. June 12, 2012); *see also Digital Sin, Inc. v. Does 1-179*, No. 11 Civ. 8172, 2012 WL 8282825, at *1 (S.D.N.Y. Feb. 1, 2012) ("[S]uch discovery creates a cognizable risk that the names produced could include individuals who did not in fact download the copyrighted material."). Nevertheless, the possibility that a third party downloaded and distributed the copyrighted works, as opposed to the Internet subscriber himself, does not preclude a finding that the plaintiff has established a *prima facie* claim of copyright infringement. *See Patrick Collins v. John Doe 1*, 945 F. Supp. 2d 367, 377 (E.D.N.Y. 2013) ("[W]hile it is a reasonable possibility that the Defendant here did not commit any copyright infringement because another individual did so using his IP address, such as a different family member, visitor, neighbor, or passerby, it is an equally reasonable possibility that the Defendant committed the accused of act."); *Patrick*

*Collins, Inc. v. Does 1-6*, No. 12 Civ. 2964, 2012 WL 2001957, at *1 (S.D.N.Y. June 1, 2012) (allowing for expedited discovery despite acknowledging that "the true infringer could just as easily be a third party who had access to the internet connection"); *see also Malibu Media, LLC v. Doe*, No. 15-CV-8252, 2016 U.S. Dist. LEXIS 92096, at *14 (D.N.J. July 14, 2016) ("Plaintiff would be unable to enforce its rights if any defendant could quash a subpoena based on the mere possibility that someone else had used the defendant subscriber's IP address to perpetuate the alleged infringement."); *Malibu Media LLC v. Doe*, No. 13-12178, 2013 WL 3945978, at *4 (E.D. Mich. July 31, 2013) ("While there is a possibility that a third party has somehow gained access to Defendant's IP address, the more likely explanation is that it is Defendant who is distributing Plaintiff's works."). To that end, Patzer testified that, based on his analysis of "raw information," including the Doe Defendant's IP address, Transmission Control Protocol ("TCP") port number, and software used to download and distribute Malibu Media's copyrighted material, he was able to conclude that Malibu Media's copyrighted content was not only disseminated from the same IP address, but also from the same computer. *Id.* at 57:17-58:3, 59:4-17, 60:4-12, 67:10-19; *see also* Tr. Ex. 3 (log of raw information). Although it is ultimately possible that someone other than the Doe Defendant distributed Malibu Media's copyrighted content from this computer, Plaintiff's evidence and allegations are sufficient at this stage to establish a *prima facie* claim for copyright infringement.[4]

---

[4] To the extent that Defendant contends that a proxy server may have resulted in a misidentification of the Doe Defendant in this action, *see* Def.'s Supp. Br. at 3, Patzer testified that "there is nothing in [the] record and all of [his] data that indicates that a proxy server was involved here." *See* Tr. 90:14-21.

Finally, relying on *Malibu Media, LLC v. John Does 1-10*, No. 12-CV-3623, 2012 WL 5382304, at *3 (C.D. Cal. June 27, 2012), Defendant argues that "Malibu conspicuously fails to present any evidence that John Doe either uploaded, downloaded, or even possessed a complete copyrighted video."[5] *See* Def.'s Mot. ¶ 29. To that end, at the evidentiary hearing, Patzer testified that, after connecting to a peer sharing Malibu Media's copyrighted material, Excipio downloaded sixteen kilobytes of data to compare to Malibu Media's original source content in order to "make sure that the content in the entirety is the same." *See* Tr. 16:2-11, 39:4-8, 62:16-63:10. According to Defendant, "16 kilobytes, which is only two seconds of the video, are not enough to show copying of constituent elements of the work" because "[s]uch an infinitesimal portion cannot be said to contain any substantive content." Def.'s Supp. Br. at 2. As an initial matter, Patzer testified that, although Exhibit B to the Complaint depicts "one individual exchange [of data] for each title" of Malibu Media's copyrighted material, Excipio actually engaged in multiple data exchanges per title. *See* Tr. 61:15-25, 62:11-24. Therefore, Malibu Media's evidence of infringement is not actually limited to a single sixteen-kilobyte clip. *Id.* at 25:11-26:7. Moreover, in *John Does 1-10*, the court actually allowed the plaintiff to serve a subpoena on the defendant's ISP and "decline[d] to opine whether transmitting pieces of a copyrighted work using BitTorrent, without transmitting all of the pieces,

---

[5] Defendant also relies on *Malibu Media, LLC v. Doe*, 82 F. Supp. 3d 650 (E.D. Pa. 2015) in support of his argument that "16 kilobytes, which is only two seconds of the video, are not enough to show copying of constituent elements of the work . . . ." *See* Def.'s Supp. Br. at 2. However, *Doe* is distinguishable, as in that case, the Eastern District of Pennsylvania held that the plaintiff's evidence was insufficient to warrant summary judgment on its claim for copyright infringement. 82 F. Supp. 3d at 351-52.

constitutes copyright infringement." 2012 WL 5382304, at *3. Indeed, the Second Circuit has held that "a copyright infringement may occur by reason of a substantial similarity that involves only a small portion of each work." *Burroughs v. Metro-Goldwyn-Mayer, Inc.*, 683 F.2d 610, 624 n.14 (2d Cir. 1982); *see also Patrick Collins*, 945 F. Supp. 2d at 377 (rejecting the argument that "transmitting only pieces of a copyrighted work, as opposed to transmitting all of the pieces, cannot constitute copyright infringement" and denying the defendant's motion to dismiss). Accordingly, Plaintiff's allegations are sufficient at this stage to state a plausible claim for copyright infringement against the Doe Defendant.

Because Plaintiff has pled copyright infringement sufficient to establish a *prima facie* claim, this factor weighs in favor of denying Defendant's motion to quash.

### ii. *Whether Plaintiff's Discovery Requests are Sufficiently Specific*

The second factor of the *Sony Music* standard requires that the discovery request is "sufficiently specific enough 'to establish a reasonable likelihood that the discovery request would lead to identifying information that would make possible service upon the Defendant." *Malibu Media, LLC v. Doe*, No. 15-CV-2624, 2015 WL 6116620, at *3 (S.D.N.Y. Oct. 16, 2015) (quoting *Sony Music*, 326 F. Supp. 2d at 566); *see also John Does 1-11*, 2013 WL 3732839, at *5 n.1 (S.D.N.Y. July 16, 2013) ("Discovery requests must be sufficiently specific to establish a reasonable likelihood that the discovery request would lead to identifying information that would make possible service upon particular defendants who could be sued in federal court.") (internal quotation omitted); *In re BitTorrent Adult Film Copyright Infringement*

*Cases*, 296 F.R.D. at 93 (allowing for disclosure of names and addresses, but not email addresses or phone numbers).

Here, the Verizon Subpoena is sufficiently specific to establish a reasonable likelihood that it will lead to information that will make service on the Doe Defendant possible. Pursuant to this Court's July 29, 2015 Discovery Order, Malibu Media may only subpoena the John Doe defendant's name and address. *See* Discovery Order at 11. Indeed, other courts have held that similar requests were sufficiently specific in denying motions to quash. *See, e.g.*, *John Doe Subscriber Assigned IP Address 24.90.139.137*, 2016 WL 1651869, at *2 (observing that "the name and current and permanent address of the subscriber associated with the identified IP address" was "highly specific, and reasonably likely to lead to identifying information that would make possible service upon the Defendant") (internal alterations omitted); *Doe*, 2015 WL 6116620, at *3 (holding that the same information was "sufficiently specific"); *John Doe No. 4*, 2012 WL 5987854, at *3 (holding that the plaintiff's request for the defendant's name, current and permanent address, e-mail address, and Media Access Control Address was "highly specific").

Because the Verizon Subpoena is sufficiently specific, this factor weighs in favor of denying Defendant's motion to quash.

   iii. *Whether Alternative Means Exist to Obtain the Information Plaintiff Seeks in the Verizon Subpoena*

Here, Plaintiff has established that it does not have alternative practical means of obtaining the Doe Defendant's identity such that it can effect service. According to Malibu Media, prior to seeking leave to issue the Verizon Subpoena, it

"searched for Defendant's IP address on various web search tools, . . . conducted its own research on its ability to identify Defendant by reviewing numerous sources of authority, . . . [and] discussed the issue at length with its computer forensics investigator . . . ." Pl.'s Opp'n at 16. These efforts are sufficient to establish that alternative means of learning Defendant's identity do not exist. *See, e.g., John Doe Subscriber Assigned IP Address 24.90.139.137*, 2016 WL 1651869, at *2 (holding that the plaintiff had "no other practical means of obtaining the information to serve process on the Defendant" where the plaintiff had "no information about the Defendant's identity other than the IP Address used to make the unauthorized copies"); *Malibu Media, LLC v. Doe*, No. 15 Civ. 4381, 2015 WL 4923114, at *1 (S.D.N.Y. Aug. 18, 2015) ("Plaintiff has no other means of learning Defendant's name and address, and the ISP is statutorily prohibited from providing this information to Malibu Media absent a court order.") (citing 47 U.S.C. § 551(c)); *Digital Sin, Inc. v. Does 1-176*, 279 F.R.D. 239, 241 (S.D.N.Y. 2012) ("Absent a Court-ordered subpoena, many of the ISPs, who qualify as 'cable operators' for purposes of 47 U.S.C. § 522(5), are effectively prohibited by 47 U.S.C. § 551(c) from disclosing the identities of the putative defendants to Plaintiff.").

Relying on *Malibu Media, LLC v. Doe*, No. 15 Civ. 1883, 2015 WL 1780965 (S.D.N.Y. Apr. 10, 2015), Defendant counters that "Plaintiff's assertion that there is no alternative means of obtaining the desired information is inadequate." Def.'s Mot. ¶ 30. However, unlike that case, in which the court denied the plaintiff's motion for expedited discovery where its "submissions [were] devoid of any information

describing what, if any, alternative means the plaintiff attempted to use to obtain the defendant's identity," 2015 WL 1780965, at *2, here, as discussed above, Malibu Media made sufficient efforts to ascertain the Doe Defendant's identity and contact information without a subpoena. *See* Pl.'s Opp'n at 16.

Defendant further argues that "the Paige declaration that Judge Fox found deficient [in *Doe*] is identical to the Paige declaration submitted in support of the motion for this case." Def.'s Mot. ¶ 31. However, in opposition to Defendant's instant motion, Paige submitted a supplemental declaration and provided credible testimony at the April 20, 2016 evidentiary hearing. *See* Supplemental Declaration of Patrick Paige ("Paige Supp. Decl."), DE [15]. In his Supplemental Declaration, Paige states that, based on his work experience, he knows "that the *only* entity able to correlate an IP address to a specific individual at a given date and time is the Internet Service Provider." *Id.* at ¶ 15 (emphasis in original). According to Paige, "law enforcement and copyright holders *must* subpoena Internet Service Providers because without the information identifying the subscriber of the IP address, they are unable to otherwise identify an anonymous internet subscriber." *Id.* at ¶ 14 (emphasis in original). To that end, Paige testified that "it is common knowledge in law enforcement as well as in the private sector" that, pursuant to a "congressional act," an ISP will not "provide a civil litigant its subscriber's information without a subpoena." Tr. 103:12-23; *see also* 47 U.S.C. § 551(c)(1) ("Except as provided in paragraph (2), a cable operator shall not disclose personally identifiable information concerning any subscriber without the prior written or electronic consent of the subscriber concerned . . . ."). Paige's

declarations and credible testimony are sufficient to establish that Plaintiff lacks alternative means to obtain the Doe Defendant's identity.

Because Plaintiff lacks alternative means of obtaining the information it seeks in the Verizon Subpoena, this factor weighs in favor of denying Defendant's motion to quash.

      *iv.*    *Whether the Subpoenaed Information is Necessary to Advance Plaintiff's Claims*

It is well-established that a defendant's identity is critical in advancing a plaintiff's claim. *See Sony Music*, 326 F. Supp. 2d at 566 ("Ascertaining the identities and residences of the Doe defendants is critical to plaintiffs' ability to pursue litigation, for without this information, plaintiffs will be unable to serve process."); *see also John Doe Subscriber Assigned IP Address 24.90.139.137*, 2016 WL 1651869, at *2 ("Without learning the Defendant's identity and address, the Plaintiff will be unable to serve process and pursue its claim."). Indeed, Defendant does not dispute that his identity is necessary for Malibu Media to effect service and proceed with its claims against him. Because Defendant's identity is necessary to advance Plaintiff's claims, this factor weighs in favor of denying Defendant's motion to quash.

      *v.*    *Whether Defendant has an Expectation of Privacy*

Courts in the Second Circuit "have held that ISP subscribers have a minimal expectation of privacy in the sharing of copyrighted material." *John Does 1-11*, 2013 WL 3732839, at *6 (citing *Arista Records LLC*, 603 F.3d at 118). To that end, courts have observed that, although defendants in similar actions "have privacy interests due to the nature of the subject infringement, those interests do not 'give way to

plaintiff['s] right to use the judicial process to pursue what appear to be meritorious copyright infringement claims.'" *Next Phase Distribution, Inc. v. Does 1-138*, No. 11 Civ. 9706, 2012 WL 691830, at *3 (S.D.N.Y. Mar. 1, 2012) (quoting *Sony Music*, 326 F. Supp. 2d at 566); *see also Arista Records LLC*, 604 F.3d at 124 ("[W]e regard Doe 3's expectation of privacy for sharing copyrighted music through an online file-sharing network as simply insufficient to permit him to avoid having to defend against a claim of copyright infringement."); *Rotten Records, Inc. v. Doe*, 107 F. Supp. 3d 257, 259 (W.D.N.Y. 2015) ("Plaintiff's interest in learning Defendant's name and address outweighs Defendant's privacy interest.").   Because Defendant's privacy interest is "minimal," and is outweighed by Plaintiff's interest in obtaining the discovery it seeks, *see John Does 1-11*, 2013 WL 3732839, at *6, this factor weighs in favor of denying Defendant's motion to quash.

Accordingly, because all of the relevant factors weigh in favor of Malibu Media, Defendant's motion to quash is denied.

### C. <u>Motion for Protective Order</u>

Finally, relying on Fed. R. Civ. P. 26, Defendant argues that "[g]ood cause exists for a protective order to prevent the disclosure of Defendant's identifying information because the disclosure of such information would subject Defendant to the annoyance, embarrassment, oppression, and undue burden and expense of being subject to Plaintiff's attempt to try to extract a settlement out of Defendant."  Def.'s Mot. ¶¶ 55, 56.  However, for the reasons set forth herein, both in adhering to the Court's original decision upon reconsideration, and in denying Defendant's motion to

quash, as well as for the reasons discussed in the Court's July 29, 2015 Discovery Order, the Court concludes that good cause does not exist to issue the protective order that Defendant seeks in the instant motion. *See John Wiley & Sons, Inc.*, 284 F.R.D. at 192 (declining to issue a protective order where each of the factors in the balancing analysis weighed in favor of denying the defendant's motion to quash). Therefore, Defendant's motion for a "protective order to prevent the disclosure of [his] identifying information" is denied.

## III.   CONCLUSION

For the reasons set forth herein, Defendant's:  (i) motion for reconsideration is granted, but upon reconsideration, the Court adheres to its original decision contained in the July 29, 2015 Discovery Order; (ii) motion to quash is denied; and (iii) motion for a protective order is denied.  Consistent with the Court's Discovery Order, and on Plaintiff's consent, *see* Pl.'s Opp'n at 21-22, Defendant may litigate this action anonymously through the close of discovery.  *See* Discovery Order at 12; *see also John Doe No. 4*, 2012 WL 5987854, at *4-5 (denying motion to quash, but allowing the defendant to proceed anonymously).  An Order lifting the stay of this Court's July 29, 2015 Discovery Order will be filed separately in this action, and in all other actions in which a stay of the Discovery Order was imposed.

Dated: Central Islip, New York
      August 23, 2016

**SO ORDERED**

/s/ Steven I. Locke
STEVEN I. LOCKE
United States Magistrate Judge